IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GOLDFISH SHIPPING, S.A.  :  CIVIL ACTION
          :
   v.       :
          :
HSH NORDBANK AG   :  NO.  07-3518

**MEMORANDUM**

**Padova, J.**                **April 1, 2009**

  On November 3, 2008, we issued a Memorandum Opinion and Order, dismissing the nine-count Amended Complaint that was filed by Plaintiff Goldfish Shipping, S.A. ("Goldfish") and entering judgment in favor of Defendant HSH Nordbank AG ("Nordbank"). Ten days later, Goldfish filed a Motion to Amend the Judgment pursuant to Fed. R. Civ. P. 59(e), and sought leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a). The proposed Second Amended Complaint, which Goldfish attached to the Motion to Amend, contains twelve counts and essentially seeks the same relief as was sought in the First Amended Complaint. Goldfish has reframed the legal claims, however, and asserted new legal theories in an apparent attempt to circumvent the legal deficiencies identified in our November 3, 2008 Memorandum Opinion. For the following reasons, we deny Goldfish's Motion.

I.  BACKGROUND

  In early 2003, Odin Denizcilik, A.S. ("Odin") was the owner of the M/V Ahmet Bey (the "Ship"). Nordbank held a first mortgage on the Ship. Odin defaulted on the mortgage, Nordbank had the Ship arrested, and the Marshal sold the Ship to Goldfish in a foreclosure sale. Thereafter, Odin had the Ship seized in both Barcelona, Spain and Ravena, Italy, claiming continued ownership.[1]

---

[1]A more complete recitation of the factual and procedural background of this case, and the litigation that preceded the institution of this action, is included in our November 3, 2008 Memorandum Opinion.

Goldfish commenced the instant action against Nordbank on August 24, 2007, seeking damages associated with Odin's two seizures of the Ship.  Nordbank filed an Answer to the Complaint on October 31, 2007.  Soon thereafter, the parties commenced discovery.  On May 7, 2008, Goldfish filed a Motion for Leave to File an Amended Complaint, asserting that the Amended Complaint would "tailor the allegations to more accurately reflect facts gleaned during discovery" and that amendment would "ensure that the claims are . . . narrowly tailored and specific." (Mem. in Supp. of Mot. for Leave to File Am. Compl., Docket No. 16, at 2, 4.)  We granted the Motion as unopposed on May 22, 2008, and the Amended Complaint (the "First Amended Complaint") was filed that same day.  The First Amended Complaint asserted nine claims against Nordbank: (1) Unjust Enrichment, (2) Promissory Estoppel, (3) Misrepresentation, (4) Fraud/Fraud in the Inducement, (5) Breach of Warranty, (6) Breach of Implied Warranty, (7) Contract Implied in Fact,  (8) Contract Implied in Law, and (9) Breach of the Implied Covenant of Good Faith and Fair Dealing.  The crux of the First Amended Complaint was that Nordbank had failed to deliver the Ship to Goldfish "free and clear" of Odin's claims to the Ship.  Goldfish asserted that Odin remained the registered owner of the Ship on the Turkish Registry of Shipping, and that Nordbank should therefore be liable for the damages that Goldfish suffered on account of Odin's arrests of the Ship in Barcelona and Ravenna.

On May 30, 2008, Nordbank filed a Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Approximately six weeks later, on July 18, 2008, upon the joint request of the parties, we stayed discovery pending resolution of the Motion to Dismiss.[2]  We held argument on the Motion on October 6, 2008, and granted the Motion in a lengthy Memorandum and Order dated

---

[2]The discovery deadline at the time was August 1, 2008.  As of the date that we stayed discovery, the parties had conducted extensive written discovery but, according to Goldfish, both parties still desired to take Rule 30(b)(6) depositions.  (See Goldfish Reply Br. at 6.)

Case 2:07-cv-03518-JP   Document 43   Filed 04/02/2009   Page 3 of 15

November 3, 2008. Essentially, we held that all of Goldfish's claims failed because they rested on the premise that the Ship had <u>not</u> been sold "free and clear of all liens, claims and encumbrances." As we explained, Goldfish's reliance on this premise was fatal to its claims because the Ship had been sold pursuant to the Ship Mortgage Act, which, by its terms, mandates that the Ship had been "sold free of all . . . claims." <u>See</u> 46 U.S.C. § 31326(b). In the alternative, we stated that Goldfish's claims failed because, inter alia, the First Amended Complaint did not allege (1) any contract or warranty between the parties, (2) any promise or misrepresentation made by Nordbank to Goldfish, (3) any legal duty on the part of Nordbank that had been violated, and (4) any unjust enrichment. Finally, we added at the end of the opinion that we believed the dismissal of the First Amended Complaint to be "fair under the circumstances," because, among other things, Nordbank's alleged failures occurred before final distribution of the proceeds of the judicial sale (the "res") and yet Goldfish did not bring those failures to this Court's attention, or seek compensation from the res before its final distribution.

In its Motion to Amend the Judgment, Goldfish argues that we erred in dismissing its First Amended Complaint without further leave to amend, and contends that we should remedy that error by permitting it to file the proposed Second Amended Complaint that it attaches to its Motion. Like the First Amended Complaint, the proposed Second Amended Complaint asserts claims of promissory estoppel, misrepresentation, fraud, breach of contract implied in fact, breach of contract implied in law, breach of warranty, and breach of the implied covenant of good faith and fair dealing.[3] In addition, it adds three counts for "breach of duty." Essentially, the Second Amended Complaint

---

[3] The only legal claim that was in the First Amended Complaint, but is not included in the second, is the claim for Unjust Enrichment.

appears to accept that the Ship was sold free and clear of all liens, claims, and encumbrances pursuant to 46 U.S.C. § 31326, and asserts instead that, irrespective of this fact, Nordbank breached a contract- or tort-based duty to (1) take all actions "ministerial and otherwise" to erase Odin's last-remaining "indicia of ownership" by deleting (or unconditionally consenting to the deletion of) the Ship from the Turkish Registry, and (2) deliver "marketable" title to the Ship.

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 59(e), after final judgment is entered, the plaintiff has "a ten-day window in which to seek to reopen the judgment and amend the complaint." Id. "[L]eave to amend within this window should, as Federal Rule of Civil Procedure 15(a) puts it, 'be freely given when justice so requires.'" Id. (quoting Fed. R. Civ. P. 15(a)). "Where a timely motion to amend judgment is filed under Rule 59(e), the Rule 15 and 59 inquiries turn on the same factors." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001) (citing Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984), and Newark Branch, NAACP v. Town of Harrison, N.J., 907 F.2d 1408, 1417 n.14 (3d Cir. 1990)). In other words, the district court should consider the propriety of amendment under the standards applicable to Rule 15, as if the complication of the prior entry of judgment had not occurred.[4] Adams, 739 F.2d at 864; Newark Branch, NAACP, 907 F.2d at 1417 ("[C]ourts have held that grants for leave to amend complaints should be routinely granted to plaintiffs, even after judgments of dismissal have been entered against them, if the appropriate

---

[4]Accordingly, although a Rule 59(e) motion must ordinarily be based on either an intervening change in controlling law, the availability of new or previously unavailable evidence, or the need to correct a clear error of law or prevent manifest injustice, see North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995), the United States Court of Appeals for the Third Circuit has dispensed with these requirements when the Rule 59(e) motion is accompanied by a Rule 15(a) request to amend.

Case 2:07-cv-03518-JP   Document 43   Filed 04/02/2009   Page 5 of 15

standard for leave to amend under Fed.R.Civ.P. 15(a) is satisfied."). That said, "the factors that guide [the review under Rule 15] may be affected by the fact that a . . . judgment was granted before plaintiffs sought leave to amend their complaint." Adams, 739 F.2d at 864.

"Both a motion to amend a judgment and a motion for leave to amend a complaint are addressed to the sound discretion of the district court." Cureton, 252 F.3d at 272. Under Rule 15(a), we may deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). "The first four of these reasons devolve to instances where permitting amendment would be inequitable." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). "Thus amendment must be permitted . . . unless it would be inequitable or futile. " Id.

Futility in this context "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). In assessing futility, we apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). Id. (citations omitted); In re Digital Island Sec. Litig., 357 F.3d 322, 337 (3d Cir. 2004) (finding no error in district court's denial of plaintiff's motion under Rules 59(e) and 15(a) when proposed amended complaint failed to state a claim under Rule 12(b)(6) and, therefore, leave to amend would be futile). Thus, we take the factual allegations of the proposed amended complaint as true, draw all reasonable inferences in favor of the plaintiff, and deny the motion to amend if the factual allegations in the complaint do not raise plausible claims and are not sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (citing 5 C. Wright & A. Miller, Federal

Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)); Phillips v. County of Allegheny, 515 F.3d

224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## III.   DISCUSSION

Goldfish argues in its Motion to Amend the Judgment that allowing it to file a Second

Amended Complaint at this "early stage" of the litigation is "not inequitable," is "in the interest of

justice," and is "anything but futile."[5]  (Mem in Supp. of Rule 59(e) Mot., at 3.)  Nordbank responds

that the proposed amendment is both inequitable and futile.  For the following reasons, we deny

Goldfish's Motion and refuse its request for leave to file a Second Amended Complaint.

### A.    The Equities/Undue Delay

Goldfish argues that the equities favor amendment, because this is a case of "first impression,"

which requires an "exploration into the nature of a judicial sale," and which is still in the "early

stages," so that no prejudice will result from amendment.  (Id.)  We find, to the contrary, that the

equities – and, more particularly, considerations of undue delay – favor denial of Goldfish's Motion.

As stated above, a court may deny amendment of a complaint if such amendment would be

inequitable, i.e., the need for the amendment is the result of the movant's undue delay, bad faith or

---

[5]Goldfish also argues that we erred in dismissing its First Amended Complaint outright, without sua sponte offering it leave to amend.  In support of this argument, it cites precedent that "in civil rights cases[,] district courts must offer amendment - irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). However, in non-civil rights cases, i.e., "in ordinary civil litigation[,] it is hardly error for a district court to enter final judgment after granting a Rule 12(b)(6) motion . . . when the plaintiff has not properly requested leave to amend its complaint." Id. at 253.  Here, Goldfish did not request leave to amend its First Amended Complaint before we granted Nordbank's 12(b)(6) motion and entered judgment.  Accordingly, Goldfish's argument that we erred in dismissing its complaint without sua sponte offering it leave to amend is completely meritless.

dilatory motive; the need for the amendment is the result of movant's repeated failure to cure

deficiencies by amendments previously allowed; and/or the amendment would cause undue prejudice

to the opposing party. "The passage of time, without more, does not require that a motion to amend

a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted

burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."

Adams, 739 F.2d at 868 (citing Chitimacha Tribe of La. v. Harry L. Laws Co., 690 F.2d 1157, 1163

(5th Cir. 1982), and Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)).

Delay "becomes 'undue,' and thereby creates grounds for the district court to refuse leave [to

amend], when it places an unwarranted burden on the court or when the plaintiff has had previous

opportunities to amend." Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008) (citing

Cureton, 252 F.3d at 273). As such, the inquiry into undue delay includes consideration of the court's

"[i]nterests in judicial economy and finality," as well as a "focus on the movant's reasons for not

amending sooner." USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004); see also Cureton, 252

F.3d at 273 (citing cases involving motions to amend after summary judgment is granted, in which the

interest of judicial economy and finality of litigation became "particularly compelling"). Drawing on

this precedent, the Third Circuit has recently indicated that it is appropriate to assess undue delay by

focusing on the movant's reasons for not amending sooner and then balancing those reasons against

the burden of delay on the district court. Bjorgung, 550 F.3d at 266.

In this case, Goldfish's explanations for not amending sooner are unavailing and its delay has

placed a significant and unwarranted burden on the Court. First, it is plain that Goldfish had prior

opportunities to amend its complaint to state the very same claims it now includes in its proposed

Second Amended Complaint. As detailed above, Goldfish filed its First Amended Complaint in May

7

of 2008, after months of discovery had been undertaken. It does not argue that, since the drafting of

the First Amended Complaint, it has obtained additional factual information, or that there has been a

change in the law, that has permitted it to formulate new, more viable theories of recovery. Rather,

it seems to argue that it simply did not think, earlier in the litigation, that it was necessary to advance

its current theories of recovery or to allege the new facts that it sets forth, because it did not realize that

the old theories were infirm or that the additional facts were important. (See Goldfish Reply Br. at 3

("[Goldfish] . . . had no reason to believe that the claims it brought failed to state a claim.").)

However, as early as November 2007, Nordbank articulated during a court conference, at which

counsel for Goldfish was present, that it believed that Goldfish's claims failed as a matter of law due

to the operation of 46 U.S.C. § 31326. Thus, when Goldfish filed its First Amended Complaint, one

would reasonably expect that it was articulating its claims in the most effective way that it could in

order to avoid any such statutory bar. Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 74 (3d Cir.

1994) (affirming district court's order refusing leave to amend, and noting that "a plaintiff has to

carefully consider the allegations to be placed in a complaint before it is filed") (internal quotation

marks omitted). Based in part on just such an expectation, we carefully considered the claims in the

First Amended Complaint, concluded that they were barred by the statute (and failed for other

reasons), and dismissed the Complaint without leave to amend.

Under these circumstances, Goldfish should not be permitted a "do-over" to assert new legal

theories and permutations of its prior claims that it could have asserted much earlier. Indeed, it seems

self-evident that a litigant should not be permitted to present legal theories to the court seriatim, raising

a new legal theory only after the court rejects its prior one. See Freeman v. Continental Gin Co., 381

F.2d 459, 469 (5th Cir. 1967) ("A busy district court need not allow itself to be imposed upon by the

presentation of theories seriatim.") (quoted in 6 C. Wright, A. Miller & M. Kane, Federal Practice and

Procedure § 1489, at p. 697 (2d ed. 1990)).   If Goldfish had viable, alternative theories of recovery

in this case, it was obligated to present those theories to the Court either in the First Amended

Complaint or in response to Nordbank's Motion to Dismiss; it should not have withheld them while

we invested considerable time and judicial resources evaluating what it now says was an incomplete

set of theories, which emphasized the wrong facts, set forth the wrong sources of legal duties and,

overall, charted the wrong course to the requested relief.  See Rolo v. City Investing Co. Liquidating

Trust, 155 F.3d 644, 655 (3d Cir. 1998) (finding that the "substantial effort and expense of resolving

defendants' Motion to Dismiss the First Amended Complaint . . . support[ed] the district court's denial

of leave to amend", abrogation on other grounds recognized by Forbes v. Eagleson, 228 F.3d 471 (3d

Cir. 2000)).   Indeed, under the particular circumstances of this case, permitting Goldfish another

chance to state claims on the same body of facts and law would certainly subvert the very important

interests of judicial economy and finality.

We conclude from the foregoing that (1) Goldfish "had previous opportunities to amend" to

assert the claims it now advances and yet it did not do so; (2) Goldfish has failed to advance defensible

"'reasons for not amending sooner,'" and (3) Goldfish's delay in seeking leave to amend "places an

unwarranted burden on the court" and undermines the interests of judicial economy and finality.

Bjorgung, 550 F.3d at 266 (citing and quoting Cureton, 252 F.3d at 273.  For these reasons, we feel

confident exercising our discretion to deny Goldfish leave to amend on the basis of undue delay.[6]

---

[6]Goldfish argues that amendment should not be denied in the absence of any identifiable
prejudice to Nordbank.  However, the Third Circuit has clearly stated: "A district court may deny
leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad
faith, or prejudicial to the opposing party."  Cureton, 252 F.3d at 272-73 (emphasis added) (citing
Foman, 371 U.S. at 182); see also Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) ("In the

B.    Futility

We also find that Goldfish's Second Amended Complaint is futile. Although we did not make an express finding in our November 3, 2008 Memorandum Opinion that any future amendment would be futile, at the time that we issued that opinion, Goldfish had articulated no legal theory on which we could have based a conclusion that a second amended complaint would <u>not</u> be futile. Accordingly, we would have been well within our discretion to have stated, at that time, that any future amendment would be futile. Not having expressly done so, however, we will consider the claims in the proposed Second Amended Complaint.

As explained above, the Second Amended Complaint is very similar to the First Amended Complaint in that it asks for the same relief, recites many of the same facts, and re-asserts certain Counts, albeit based on newly-formulated factual allegations. Essentially, however, what the Second Amended Complaint does is abandon the overall argument that the Ship was not sold "free and clear of all liens, claims and encumbrances" and instead argues that Nordbank violated some other duty, either in contract or in tort, to either delete the Ship from the Turkish Registry or unconditionally

---

absence of substantial or undue prejudice, denial [may] be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment.") (emphasis added) (citing <u>Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.</u>, 663 F.2d 419, 425 (3d Cir.1981)). Thus, we do not need to find prejudice to Nordbank in order to deny leave to amend. <u>But see</u> <u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 204 (3d Cir. 2006) ("We have consistently recognized . . . that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'") (quoting <u>Cornell & Co. v. Occupational Safety & Health Review Comm'n</u>, 573 F.2d 820, 823 (3d Cir. 1978), and citing 3 James Wm. Moore et al., Moore's Federal Practice-Civil § 15.15[2] (3d ed. 1997), and 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1488 (2d ed.1990)). That said, just as Goldfish's piecemeal presentation of its legal theories would impose an unwarranted burden on the Court, that same conduct would impose an unwarranted burden on Nordbank, which would be required to respond seriatim to Goldfish's claims. Accordingly, we believe that the granting of leave to file a Second Amendment Complaint would, in fact, be prejudicial to Nordbank.

consent to the Ship's deletion from that registry in order to extinguish that "indicia of ownership."[7]

Goldfish's claims fail to state claims upon which relief may be granted for a variety of reasons. The first three Counts aver that Nordbank violated a legal duty that arose out of (1) its status as the "seller and/or transferor of title and/or beneficiary of the sale" pursuant to 46 U.S.C. § 31326 (2d Am. Compl. ¶ 63); (2) its status as the "initiator" of the 46 U.S.C. § 31326 sale (see id. ¶ 68); or (3) Turkish law (see id. ¶ 73). However, in our November 3, 2008 Memorandum Opinion, we found as a matter of law that the Marshal was the seller of the Ship, that title to the vessel was transferred directly from Odin to Goldfish, and that no duties attached to Nordbank on account of its alleged status as the "seller." See 11/3/2008 Mem. at 13-14. Goldfish has also provided us with no authority that supports its assertion that Nordbank's status as "beneficiary of" or "initiator of" the foreclosure sale pursuant to 46 U.S.C. § 31326 gave rise to a legally-enforceable duty to delete, or to consent to the deletion of, the Ship from the Turkish Registry. Finally, while Goldfish alleges that Turkish law imposes such duties on Nordbank (as the mortgagee or foreclosing creditor), the Turkish law that it recites in the proposed Second Amended Complaint, on its face, imposes no such duties.[8] (See 2d Am.

---

[7]Goldfish states in its Reply Brief that "[t]he critical difference between the two complaints is that the proposed Second Amended Complaint puts squarely at issue the allegation that the Bank had a legal obligation to delete the vessel from the Turkish Registry of Shipping and failed to do so." (Goldfish Reply Br. at 8.) Goldfish "respectfully submits" that we did not address these issues in our November 3, 2008 Memorandum Opinion. Id. Contrary to Goldfish's assertions, however, it did allege in the First Amended Complaint that Nordbank had a legal obligation to delete the vessel from the Turkish Registry and yet failed to do so and, in fact, we addressed that claim. Specifically, Goldfish alleged that Nordbank had such a duty pursuant to a contract between Nordbank, as the Ship seller, and Goldfish, as the Ship buyer, or, in the alternative, pursuant to the mortgage agreement between Odin and Nordbank. We found both of these theories to be legally infirm, because Nordbank was not the seller of the Ship and because Goldfish was not a third party beneficiary to the mortgage agreement. 11/3/08 Mem. Op. at 13-16.

[8]The proposed Second Amended Complaint alleges that Turkish Law provides as follows:

11

Compl. ¶ 24.)

In the fourth and fifth Counts of the proposed Second Amended Complaint, Goldfish alleges claims of promissory estoppel, in which it asserts that Nordbank <u>impliedly</u> promised that it would "take all actions ministerial or otherwise . . . to delete the vessel from the Turkish Registry" and "that it could deliver . . . marketable title." (<u>Id.</u> ¶¶ 79, 84.) However, the Third Circuit has stated that a promissory estoppel claim may not be based "on the alleged existence of . . . a broad and vague implied promise." <u>C & K Petroleum Prods., Inc. v. Equibank</u>, 839 F.2d 188, 192 (3d Cir. 1988); <u>Burton Imaging Group v. Toys "R" Us, Inc.</u>, 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007) ("The first essential element of promissory estoppel requires an express promise between the promisor and promisee."). As both promissory estoppel claims rest on allegations of implied promises, both claims fail to state claims upon which relief can be granted.

----

>   Article 851. In the event that a vessel . . . loses the right to fly the Turkish flag her registration will be deleted upon request.
>
>   \*          \*          \*
>
>   In the event that the vessel loses its right to fly the Turkish flag, her registration may only be deleted with the consent of the mortgagees and third parties who have entitlement over the mortgage in accordance with the ship registration. If such consent has not been documented with the deletion request, the fact that the vessel has lost its right to fly the Turkish flag will be requested at the ship registry, without delay.  Such registration will have the effect of a ship registration deletion as long as the registered ship mortgages do not exist.

(2d Am. Compl. ¶ 24.) This provision, by its own terms, does not require mortgagees or any other parties to secure deletion of a ship from the Turkish Registry after the ship has lost its right to fly the Turkish flag. Rather, it merely says that a ship "will be" deleted from the registry "upon request" and "with the consent of the mortgagees and third parties." (<u>Id.</u>) Thus, we reject Goldfish's apparent assertion that this law imposed a duty on Nordbank to secure deletion (or to consent to the deletion) of the Ship from the Turkish Registry.

Case 2:07-cv-03518-JP      Document 43      Filed 04/02/2009      Page 13 of 15

In the sixth and seventh Counts of the proposed Second Amended Complaint, Goldfish asserts claims of Misrepresentation and Fraudulent Concealment/Fraud in the Inducement. In our prior Memorandum Opinion, we dismissed Goldfish's misrepresentation and fraud claims, because Goldfish had not alleged a misrepresentation of material fact or identified any valid source of duty to disclose any of the allegedly omitted information. See 11/3/08 Mem. Op. at 17-18. Its current claims fail for very similar reasons. Again, Goldfish has identified no legally-recognized duty to disclose that is applicable here. Moreover, while the sixth Count alleges generally that Nordbank "misrepresented to [Goldfish] that it would promptly do all things ministerial or otherwise . . . to delete the vessel and/or unconditionally consent to the deletion [of the vessel] and provide marketable title as a result of the sale," there are no additional allegations regarding the circumstances of this alleged affirmative misrepresentation. (2d Am. Compl. ¶ 89.) As such, we can only conclude that the claim is grounded in Goldfish's continuing belief, which finds no support in any identified legal authority, that Nordbank's role as the foreclosing creditor in the judicial sale alone gave rise to the "representation" that it would take certain actions to protect Goldfish against attacks on its title. Accordingly, the tort claims in Counts six and seven fail to state claims upon which relief may be granted.

Finally, the remaining five Counts of the proposed Second Amended Complaint allege claims of Breach of Implied Warranties, Breach of Implied Contracts, and Breach of the Implied Covenant of Good Faith and Fair Dealing. In our November 3, 2008 Memorandum Opinion, we stated that Goldfish had failed to identify any basis on which we could find that there was a contractual relationship between Goldfish and Nordbank. The same remains true today. As we stated in November, the facts alleged are that Nordbank was a foreclosing creditor and that Goldfish was the buyer at the resulting judicial sale. While Goldfish would like us to find that this relationship (or some

other creative characterization of it) gave rise to a contract and/or warranty, it has identified no additional facts or legal authority that would allow us to reach that conclusion. Accordingly, just as Goldfish failed to state a claim for breach of contract or warranty in the First Amended Complaint, where it presumably advanced its best, most persuasive theories, it has failed to state a contract or warranty claim on which relief could be granted here.

In sum, we find that the proposed Second Amended Complaint fails to present plausible theories of recovery and does not raise the right to relief "above a speculative level." Twombly, 127 S. Ct. at 1965. We therefore conclude that we are within our discretion to refuse Goldfish's request for leave to amend on the basis of the Second Amended Complaint's futility.

IV.    CONCLUSION

For all of the above reasons, we deny Goldfish's Motion to Amend the Judgment and its concomitant request for leave to file a Second Amended Complaint on the basis of both undue delay and futility. An appropriate Order follows.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOLDFISH SHIPPING, S.A. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HSH NORDBANK AG | : | NO.  07-3518 |

## ORDER

**AND NOW**, this 1st day of April, 2009, upon consideration of Plaintiff Goldfish Shipping, S.A.'s Motion to Amend Judgment Under Fed. R. Civ. P. 59(e) (Docket No. 38),  Defendant HSH Nordbank AG's response thereto, and Plaintiff's Reply, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

  /s/ John R. Padova, J.
John R. Padova, J.